**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 14-33542

DONALD ALAN RADEWALD
a/k/a DONALD RADEWALD
JODY L. RADEWALD

               Debtors

**MEMORANDUM ON
MOTION OF CITIZENS NATIONAL BANK
<u>FOR SUMMARY JUDGMENT</u>**

**APPEARANCES**:   MOORE AND BROOKS
      Brenda G. Brooks, Esq.
      6207 Highland Place Way
      Suite 203
      Knoxville, Tennessee 37919
      Attorneys for Debtors

               HODGES, DOUGHTY & CARSON, PLLC
      Thomas H. Dickenson, Esq.
      Post Office Box 869
      Knoxville, Tennessee 37901
      Attorneys for Citizens National Bank

               GWENDOLYN M. KERNEY, ESQ.
      Post Office Box 229
      Knoxville, Tennessee 37901
      Chapter 13 Trustee

**SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE**

Before the court is the Motion of Citizens National Bank for Summary Judgment (Motion) filed on January 29, 2015, seeking judgment as a matter of law that the post-foreclosure deficiency balance asserted by Citizens National Bank (the Bank) in its proof of claim should be allowed. Because Debtors have not presented competent evidence to overcome the statutory presumption that the price bid by the Bank at foreclosure was equivalent to the fair market value for the property at the time of foreclosure, summary judgment in the Bank's favor is appropriate.

In support of its Motion [Doc. 65], the Bank filed a memorandum of law [Doc. 66-1], the required statement of undisputed material facts [Doc. 66], the Affidavit of Rodney Tarwater [Doc. 65-1], a Note, Disclosure, and Security Agreement dated February 3, 2009 [Doc. 65-2], a Deed of Trust dated February 3, 2009 [Doc. 65-3], and an appraisal report dated December 4, 2013 [Doc. 65-4]. Debtors timely responded to the Motion by filing their response [Doc. 72], supporting brief [Doc. 73], and the requisite response to the Bank's statement of undisputed material facts [Doc. 71]. In further support of their response, Debtors filed the Affidavit of Jody Radewald [Doc. 72-1]; Certified Property Assessment [Doc. 72-2]; appraisal report dated January 9, 2009 [Doc. 72-3]; proof of claim filed by the Bank on December 12, 2014, in the amount of $47,081.57 [Doc. 72-4]; Debtors' Statement of Financial Affairs [Doc. 72-5]; Tennessee Housing Market at a Glance for 2009 [Doc. 72-6]; and Tennessee Housing Market at a Glance for 2014 [Doc. 72-7]. The Bank filed a reply to Debtors' Response, and this contested matter is now ripe for decision.[1] This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

---

[1] The parties also filed Stipulations on February 19, 2015 [Doc. 74], including a Proposed Stipulation of Undisputed Documents in which they agreed that all documents filed in connection with the Motion and Response are authenticated and admissible into evidence subject only to objections on the basis of relevancy except for the Certified Property Assessment [Doc. 72-2], which the Bank asserts is inadmissible. Debtors filed a Reply [Doc. 76] to the Bank's objection to this exhibit, arguing that it falls within the scope of Rule 902(4) of the Federal Rules of Evidence as a self-authenticated certified copy of a public record, which likewise qualifies as an exception to the hearsay rule under Rule 803(8) of the Federal Rules of Evidence. The court agrees and, to the extent it is relevant, has considered the Certified Property Assessment [Doc. 72-2] in its summary judgment analysis. The court notes that Debtors initially objected to the admissibility of the December 3, 2013 appraisal report submitted by the Bank in

1

**I. Facts**

The following facts are not in dispute. The Bank is holder of a note executed by Debtors in the original amount of $433,500.00, as modified by a renewal note, for the February 3, 2009 purchase of Debtors' residence at 703 Bridgeview Hills, Dandridge, Tennessee (the Property). [Doc. 66 at ¶ 1; Doc. 71 at ¶ 1; Doc. 65-1 at ¶ 5; Doc. 65-2.] Debtors paid $510,000 for the Property. [Doc. 72-1 at ¶ 4.] The note was secured by a duly recorded Deed of Trust, as amended by a Modification of Deed of Trust, pledging the Property as collateral. [Doc. 66 at ¶ 2; Doc. 71 at ¶ 2; Doc. 65-1 at ¶ 5; Doc. 65-3.] The Deed of Trust requires payment of all taxes by Debtors [Doc. 65-3 at ¶ 3], and additionally provides, in material part, the following default provision:

> Lender shall have the right to pursue all remedies available to it hereunder, at law or in equity. In addition, in the event of default, Trustee, or his successor in trust, is hereby authorized and empowered, upon giving twenty (20) days' notice by three (3) publications in any newspaper, daily or weekly, of general circulation, circulated in the County wherein the Property is located, to sell the Property, or any part thereof, at the front door of the Courthouse in said County to the highest bidder for cash, at public outcry, free from all rights of redemption afforded by statute, equitable rights of redemption, exemptions or homestead, rights by virtue of marriage, and all other exemptions of every kind, all of which are expressly waived. Trustee may adjourn the day of sale without further publication upon announcement at the date of sale. The Trustee or his successor in trust is further authorized and empowered to execute and deliver a deed to the purchaser at such sale. Lender may bid at any such sale. Trustee may sell to the second highest bidder at any such sale if the highest bidder does not comply with the terms of such sale. The purchaser at such sale shall be entitled to immediate possession of the Property upon the delivery to purchaser by Trustee of a deed for the Property. Prior to such sale, Trustee may enter and take possession of the Property, in which case Trustee shall be accountable only for net rents actually received by Trustee. In the event of sale hereunder, the proceeds will be applied by Trustee as follows:
> FIRST – to pay all costs and charges of executing this trust, including attorney's fees and expenses of any litigation which may arise on account of the execution and enforcement of this trust;

---

connection with paragraphs 5 and 8 of the Bank's statement of material facts, arguing that the appraisal constitutes inadmissible hearsay. [Doc. 71.] The court construes the Stipulations filed with the court as a withdrawal of Debtors' objections to the appraisal report.

2

>       SECOND – to pay the indebtedness, or any balance thereof then remaining unpaid;
>       THIRD – the remainder to be paid to such parties as are legally entitled to it.

[Doc. 65-3 at ¶ 24.]

Debtors defaulted under the terms of the note, and the Bank took action to proceed to foreclosure, which included obtaining an appraisal of the Property that valued it at $425,000.00 assuming a six-to-twelve-month marketing period. [Doc. 66 at ¶¶ 3-5; Doc. 71 at ¶¶ 3-5; Doc. 65-1 at ¶¶ 6-8; Doc. 65-4.] On December 5, 2013, a foreclosure sale of the Property was conducted, and the Bank made the high – and only – bid in the amount of $387,000.00, based upon the appraisal value less anticipated expenses to repair, clean, and prepare the property for resale. [Doc. 66 at ¶¶ 6-8; Doc. 71 at ¶¶ 6-8; Doc. 65-1 at ¶¶ 9-10.] The Bank incurred fees and expenses in association with the foreclosure sale of $1,130.22. The Bank also paid past due 2012 and 2013 property taxes owed by Debtors on the Property in the amount of $5,473.94. [Doc. 66 at ¶¶ 10, 12-13; Doc. 71 at ¶¶ 10, 12-13; Doc. 65-1 at ¶¶ 12-13.] After deducting the foreclosure bid, fees and expenses, and past due taxes, a deficiency balance of $39,645.95 remained as of December 12, 2013, with interest accrual at 5.45% (equal to $5.92 per diem), and the Bank filed a lawsuit against Debtors in the Jefferson County Circuit Court to collect this balance. [Doc. 66 at ¶¶ 14-15; Doc. 71 at ¶¶ 14-15; Doc. 65-1 at ¶¶ 14, 16.]

The Bank sold the Property for a sales price of $399,000.00 on December 27, 2013, and received net proceeds of $382,865.00 after deducting the real estate commission. [Doc. 66 at ¶ 17; Doc. 71 at ¶ 17; Doc. 65-1 at ¶ 15.] In connection with the state court lawsuit, which was pending when Debtors filed their bankruptcy case, the Bank paid attorneys' fees totaling $5,129.38. [Doc. 66 at ¶¶ 15-16; Doc. 71 at ¶¶ 15-16; Doc. 65-1 at ¶ 14.]

Debtors filed their Chapter 13 bankruptcy case on October 30, 2014. In response to question five of their Statement of Financial Affairs, they identified the Property as having been foreclosed in November 2013 and assigned its value at $499,000.00. [Doc. 72-5.] On December 15, 2014, the Bank filed a proof of claim in the amount of $47,081.57, consisting of $39,645.95 principal, $1,906.24 accrued interest as of October 30, 2014, pre-petition attorneys' fees of $5,129.38, and $400.00 for attorneys' fees in the bankruptcy case. [Doc. 72-4.] Debtors filed the Objection to Claim 4 Filed by Citizens National Bank on December 27, 2014, disputing the adequacy of the foreclosure sale and the price obtained and asserting that the Bank failed to comply with federal and Tennessee statutes governing foreclosure and the collection of deficiency balances. [Doc. 47.]

## II.  Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" utilizing the following procedures:

> (1) *Supporting Factual Positions*.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence*.  A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) *Materials Not Cited*.  The court need consider only the cited materials, but it may consider other materials in the record.

4

> (4) *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

As the moving party, the Bank bears the burden of proving, based upon the record before the court, that it is entitled to judgment as a matter of law because there is no genuine dispute concerning any material fact, such that Debtors' defenses to the deficiency balance claim are factually unsupported. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to Debtors to prove that there are genuine disputes of material fact for trial; however, they may not rely solely on allegations or denials contained in the pleadings. *See Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006) (holding that reliance upon a "mere scintilla of evidence in support of the nonmoving party will not be sufficient"); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,475 U.S. 574, 586 (1986). Further, "[w]hen plaintiffs do not provide competent evidence to the court supporting their claims at the proper time, summary judgment is appropriate." *Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 563 n.5 (6th Cir. May 25, 2010). The facts and all resulting inferences are viewed in a light most favorable to Debtors, and the court will decide whether "the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243. When "the record taken as a whole could not lead a rational trier of

5

fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

### III.  Analysis

When foreclosure of real property under a deed of trust does not fully satisfy the indebtedness, creditors have the following statutory right to recover the deficiency balance:

> (a) In an action brought by a creditor to recover a balance still owing on an indebtedness after a trustee's or foreclosure sale of real property secured by a deed of trust or mortgage, the creditor shall be entitled to a deficiency judgment in an amount sufficient to satisfy fully the indebtedness.
>
> (b) In all such actions, absent a showing of fraud, collusion, misconduct, or irregularity in the sale process, the deficiency judgment shall be for the total amount of indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale. *The creditor shall be entitled to a rebuttable prima facie presumption that the sale price of the property is equal to the fair market value of the property at the time of the sale.*
>
> (c) To overcome the presumption set forth in subsection (b), the debtor must prove by a preponderance of the evidence that the property sold for an amount materially less than the fair market value of property at the time of the foreclosure sale. If the debtor overcomes the presumption, the deficiency shall be the total amount of the indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale as determined by the court.

Tenn. Code Ann. § 35-5-118 (emphasis added).  Debtors do not assert fraud, collusion, misconduct, or irregularity in the sale process; their sole argument under section 35-5-118 is that the Bank's bid at the foreclosure was materially less than the fair market value of the Property. In support of this assertion, Debtors rely primarily on the 2013 Jefferson County tax appraisal of $502,900.00, a 2009 appraisal finding a $492,000.00 value, and Debtors' valuation in their Statement of Financial Affairs of $499,900.00.  Additionally, Mrs. Radewald states in her Affidavit that because Debtors were "willing buyers" when they purchased the property for $510,000.00 in February 2009, she believes that the value of the property at that time was

6

$510,000.00. None of this evidence, however, is sufficient to overcome the statutory presumption that the sales price at the foreclosure was equal to fair market value as of the foreclosure date.

"[T]he issue in deficiency actions is the fair market value of the property *at the time it was sold*." *Capital Bank v. Brock*, No. E2013-01140-COA-R3-CV, 2014 WL 2993844, at *6, 2014 Tenn. App. LEXIS 382, at *17 (Tenn. Ct. App. June 30, 2014) (emphasis added) (quoting *Lost Mountain Dev. Co. v. King*, No. M2004-0263-COA-R3-CV, 2006 WL 3740791, at *8, 2006 Tenn. App. LEXIS 810, at *27 (Tenn. Ct. App. Dec. 19, 2006)). The Tennessee Court of Appeals has determined that "the term 'materially less' still represents 'a pretty substantial difference.'" *GreenBank v. Sterling Ventures, LLC*, No. M2012-01312-COA-R3-CV, 2012 WL 6115015, at *9, 2012 Tenn. App. LEXIS 848, at *27 (Tenn. Ct. App. Dec. 7, 2012).

> [T]he determination of "materially less" is to be made on a case-by-case basis under the particular facts presented. Since the court will invariably be comparing the foreclosure sale price and the asserted fair market value of the property, it is axiomatic that a portion of the evidence presented will focus on the percentage difference between these two figures. However, we cannot establish a bright-line percentage, above or below which the statutory presumption is rebutted. The legislative history cited above indicates that the "materially less" standard is still a significant burden.

*GreenBank*, 2012 WL 6115015, at *10, 2012 Tenn. App. LEXIS 848, at *29 (noting that the property in question was also unfinished, in need of repairs, had water leaks, no insulation, and drainage and grading issues); *see also Capital Bank*, 2014 WL 2993844, at *6, 2014 Tenn. App. LEXIS 382, at *17 (holding that "the 15.8 percent difference between the appraised price and the foreclosure sale price, with nothing more, is insufficient to establish that the [p]roperty was sold for an amount materially less than its fair market value"); *FirstBank v. Horizon Capital Partners, LLC*, No. E2013-00686-COA-R3-CV, 2014 WL 407908, at *3, 2014 Tenn. App. LEXIS 47, at *9 (Tenn. Ct. App. Feb. 3, 2014) ("[T]his court has opted to consider the percentage difference

7

along with the condition of the property and any other factors that may provide information concerning the marketability of the property and the surrounding area."). Quoting Representative Henry Fincher, the Tennessee Court of Appeals determined:

> "[A] lot of times properties in foreclosure are found to be in need of repair, or the projects may only be partially completed. The fair market value we are talking about in this context — that's the value of the property in the condition it's in at the time of the foreclosure." Accordingly, the fact that the property at issue here is undisputedly in need of completion and repairs, would negatively impact its fair market value. Still, from the totality of the circumstance, and taking Appellants' highest proposed appraisal value and all other factual allegations as true, we cannot conclude that the trial court erred in finding that the $667,400.00 foreclosure sale price was not "materially less" than the actual value of the property at the time of foreclosure.

*GreenBank*, 2012 WL 6115015, at *11, 2012 Tenn. App. LEXIS 848, at *30-31 (finding that a sale 11% below the appraisal price was not materially less than fair market value in light of the condition of the property); *see also FirstBank*, 2014 WL 407908, at *3, 2014 Tenn. App. LEXIS 47, at *10 (holding that a presumption "that the appraisal price was equal to the fair market value . . . is not the standard" and that a sale 20% below the appraisal price was not materially less than fair market value).

Here, the most conclusive evidence before the court concerning the value of the Property on the date of foreclosure – December 5, 2013 – is the $425,000.00 appraisal value for a six-to-twelve-month marketing period dated December 3, 2013. Although Debtors urge the court to accept the 2013 Jefferson County tax appraisal of $502,900.00 as the more conclusive valuation, their reliance is not supported under Tennessee law, which has consistently found that "property tax valuations certainly are not conclusive as to the value of a parcel of real estate." *Partin v. Partin*, No. E2010-01662-COA-R3-CV, 2011 WL 1485615, at *6, 2011 Tenn. App. LEXIS 193, at *17 (Tenn. Ct. App. Apr. 20, 2011). Indeed, even though the court acknowledges that Debtors need not present conclusive evidence at the summary judgment stage, the court agrees with the

8

determination by the Tennessee Court of Appeals that "in Tennessee and elsewhere, it is the overwhelming weight of authority that assessed value *is not competent direct evidence* of value for purposes other than taxation.") *Carpenter v. Sims*, No. E2007-0622-COA-R3-CV, 2007 WL 4963008, at *4 (Tenn. Ct. App. Nov. 7, 2007) (citations, internal quotation marks, and brackets omitted) (emphasis added)); *see also City of Murfreesboro v. Worthington*, No. 01A01-9703-CV-00124, 1997 WL 772137, at *3, 1997 Tenn. App. LEXIS 906, at *7 (Tenn. Ct. App. Dec. 17, 1997) ("In Tennessee, property tax valuations are not admissible to prove the value of a parcel or any portion thereof."). Thus, the court finds that the 2013 Jefferson County tax appraisal is not sufficient evidence to create a genuine issue of material fact as to the fair market value of the Property.

Likewise, Debtors' own valuation assigned in their Schedule A is not sufficient to create a genuine issue of material fact.

> An owner of property is competent to testify as to the value of his or her property. *See* Tenn. R. Evid. 701(b); *see also Sikora v. Vanderploeg,* 212 S.W.3d 277, 283 n.5 (Tenn. Ct. App. 2006). However, an owner's valuation testimony is not competent evidence of value *if* it is based on pure speculation or an erroneous standard. *Airline Const., Inc. v. Barr,* 807 S.W.2d 247, 256 (Tenn. Ct. App. 1990) ("Although an 'owner' of real property is deemed to have special knowledge about his property to offer an opinion as to its value, the owner's opinion will be given little weight when founded upon pure speculation. There must be some evidence, apart from mere ownership, that this 'value' is a product of reasoned analysis."). Mere ownership is not, by itself, sufficient to make the valuation opinion. *Id.*

*Corbitt v. Amos*, No. M2011-01916-COA-R3-CV, 2012 WL 4473963, at *4, 2012 Tenn. App. LEXIS 686, at *12 (Tenn. Ct. App. Sept. 27, 2012). Finally, the 2009 appraisal and purchase price that Debtors paid in 2009, nearly five years before the foreclosure, are not competent evidence of the fair market value of the property at the time of the foreclosure. *See Capital Bank*, 2014 WL 2993844, at *6, 2014 Tenn. App. LEXIS 382, at *17.

9

The Bank arrived at its $387,000.00 bid by deducting from the $425,000.00 appraisal value the anticipated expenses to repair, clean, and prepare the Property for resale. [Doc. 65-1 at ¶¶ 9-10]. This calculation yields a 9% difference between the fair market value as established by the appraisal and the foreclosure bid of the Bank. Such a difference is well within the percentages that Tennessee courts consistently have found to be acceptable. The next best indicator of the fair market value of the Property at the time of the foreclosure sale is the price that the property sold for 22 days after the foreclosure — $399,000.00, which obviously is less than the December 3 appraisal. [Doc. 66 at ¶ 17; Doc. 71 at ¶ 17.] Such sale serves as additional evidence in support of the reasonableness of the foreclosure bid by the Bank.

Because Debtors have not presented competent evidence that the Bank sold the Property for an amount materially less than the fair market value of property on December 5, 2013, Debtors cannot rebut the statutory presumption under Tennessee Code Annotated § 35-5-118, and Citizens National Bank is entitled to its full deficiency balance of $47,081.57 as reflected in its proof of claim filed on December 15, 2014.[2] An Order consistent with this Memorandum will be entered.

FILED: March 30, 2015

> BY THE COURT
>
> *Suzanne H. Bauknight*
>
> SUZANNE H. BAUKNIGHT
> UNITED STATES BANKRUPTCY JUDGE

---

[2] Debtors did not raise any challenge to the Bank's attorneys' fees in either their initial objection [Doc. 47] or Debtors' Brief in Support of Response to Motion for Summary Judgment Filed by Citizens National Bank [Doc. 73]. Accordingly, the court does not treat Debtors' denial of paragraph 18 of the Bank's statement of material facts [Doc. 71] as sufficient for the court to consider the issue. The court, however, does not find the claimed amount of $5,129.38 to be patently unreasonable in light of the pre-bankruptcy state-court litigation in addition to the foreclosure itself.